Thomas C. Frost, Esq. (185187)
Jonathan Stein, Esq. (123894)
Georg M. Capielo, Esq. (245491)
THE FROST FIRM
301 Santa Fe Drive
Encinitas, CA 92024
Telephone:  (619) 822-1741
Facsimile:  (619) 822-1744
tfrost@thefrostfirm.com
jstein@thefrostfirm.com
*Attorneys for Plaintiff AK FUTURES LLC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| AK FUTURES LLC, | **Case No:** |
|---|---|
| Plaintiff, | Related Cases: |
| vs. | Case No. 8:21-cv-1027-JVS-ADS |
| LEAF OF VAPE  LLC, a Florida limited liability company, and Does 1-10 | Case No. 8:21-cv-1028-JVS-ADS |
| | Case No. 8:21-cv-1061-JVS-ADS |
| | Case No. 8:21-cv-1154-JVS-ADS |
| Defendants. | Case No. 8:21-cv-2121-JVS-ADS |
| | **INITIAL COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff AK Futures LLC ("**AKF**"), for its initial complaint against Defendants Leaf Of Vape, LLC and Does 1-10 (together, the "**Defendants**"), alleges as follows:

**PRELIMINARY STATEMENT**

1.      This action was severed from *AK Futures, LLC v. LCF Labs, et al, CACD Case No. 8:21-cv-02121* and so is filed as a separate action with a new complaint. *See, e.g., The Rutter Group, Federal Civil Procedure Before Trial (Nat. Ed.) at ¶¶16:159.1 and 16:163 et seq.* This action is against one of the severed Defendants and Does 1-10, and is for counterfeiting and the willful infringement of Plaintiff AKF's intellectual property rights in its popular CAKE™ brand of hemp derivative Delta-8 products ("**Cake™ branded Delta-8 products**"). Defendants are unlawfully advertising, marketing, selling, transporting and distributing unauthorized, inauthentic, and infringing products that attempt to replicate or appear identical to AKF's authentic products. Defendants' products are of unknown quality and threaten substantial, irreparable harm to AKF's brand as well as to consumers, who purchase Defendants' products wrongly believing them to have been made, tested, and lawfully manufactured by AKF.

2.      AKF is the owner and authorized seller of Cake™ branded Delta-8 products, including disposable electronic delivery systems and electronic cannabinoid liquid ("e-liquid"). Delta-8 is a hemp-derived product with less than 0.3% of the psychoactive delta-9-tetrahydrocannabinol compound and so it is permitted to be sold in interstate commerce under the 2018 Farm Bill. This was recently affirmed in *USDC-CACD Case No. 8:21-cv-01027-JVS-ADS* and a landmark decision of the Ninth Circuit, *AK Futures, LLC v. Boyd Street Distro, LLC*, 35 F.4th 682 (9th Cir.2022).

3.      The safety and efficacy of Delta-8 vaping products are regulated under the PACT Act and other rules and regulations. AKF's Cake™ brand is the top-selling brand of Delta-8 vaping goods in the United States. It is carefully tested and manufactured with scrupulous attention to legal requirements and limitations. The

manufacturing, sale and distribution of AKF's Cake™ branded Delta-8 products requires expensive quality controls and constant input by legal counsel.

4.      Given the popularity and consumer recognition of Cake™ branded Delta-8 products, significant demand for them exists in the U.S. market. Unfortunately, counterfeiters and unauthorized sellers of inauthentic goods replicating AKF's Cake™ marks, its copyrighted Cake design and logos, and AKF's products and packaging, are unlawfully trading on AKF's brand and the goodwill AKF has developed in its designs, marks, logos, products, packaging, processes and quality controls at great expense.

5.      Defendants are part of an advanced, well-funded, international network of counterfeiters and unauthorized manufacturers, importers, distributors, purchasers and sellers of inauthentic Cake™ branded products (the "**Cake Counterfeiting Network**").  This national Cake Counterfeiting Network is already the subject of five related cases in this District. Already, judgments and permanent injunctions have been obtained in four of the related cases -- *AK Futures LLC v Green Buddha LLC*, Case No. 8:21-cv-01028-JVS-ADS [*Dkt 39*]; *AK Futures LLC v Smoke Totes, LLC*,  Case No. 8:21-cv-01061-JVS-ADS [*Dkt 26*]; *AK Futures LLC v Boyd Street Distro LLC*, Case No. 8:21-cv-01027-JVS-ADS *[Dkt 58]; and AK Futures LLC v Limitless Trading Co, LLC*, Case No. 8:21-cv-01154-JVS-ADS *[Dkt 59].*

6.      AKF's investigation has shown that the products being manufactured, imported, sold, shipped and distributed by the Cake Counterfeiting Network are of unknown or inferior quality to AKF's authentic product, and threaten immeasurable harm to AKF's brand and customer good will.  They may harm consumers, violate the 0.3% limitation on psychoactive delta-9-tetrahydrocannabinol compound, and associate with this lawless and dangerous behavior the fully tested and lawfully manufactured Cake™ branded Delta-8 products.

7.     Defendants' counterfeiting activities have been so pervasive, persistent, and ongoing, that they have effectively cornered the Delta-8 market for Cake ™ 510 Carts and Cake ™ Gummies and forced AKF to temporarily close production of authentic Cake™ products for these two key product lines altogether. Defendants have helped flood the market with cheaper, inauthentic replicas of Cake™ 510 Carts and Gummies, fraudulently labeled with bogus "Certificates of Analysis", that willfully misrepresent to consumers that they are rigorously tested and lawfully manufactured AKF products.  Instead, they are psychoactive and have not been tested or approved for human consumption.

8.     AKF suffered and continues to suffer severe economic hardship, monetary damages and irreparable harm as a result.  AKF's sale of authentic Cake™ branded Delta-8 products, and the financial worth of its intellectual property are reduced by the Cake Counterfeiting Network of counterfeiters and unauthorized manufacturers, importers and sellers of inauthentic Cake™ products.

9.     Accordingly, AKF urgently brings this action to protect its brand and consumers from counterfeit Cake™ products.

## PARTIES, SUBJECT MATTER JURISDICTION AND VENUE

10.     Plaintiff AKF is a limited liability company organized and existing under the laws of Delaware with its principal place of business in California located at 1007 West Grove Avenue, Suite B, Orange, California 92865.  AKF is the owner and rights-holder to its Cake™ marks and related intellectual property.

11.     Defendant Leaf of Vape, LLC is a limited liability company organized under the laws of Florida.  It conducts business as "Leaf of Vape" and "Huff Deep" and its principal place of business is 10329 Cross Creek Boulevard, Tampa, Florida 33647.

12.     Defendants Does 1-10 are unknown manufacturers, importers, suppliers to, or agents of the named defendants, or are additional distributors, re-sellers or retailers and are residents of, or will be present in, the State of California and this Judicial District (or have transacted business in the State of California during the time-period covered by this complaint) and are subject to the jurisdiction of this Court.  The identities and roles played by Does 1-10 are not currently known.  AKF will amend its complaint to include the name or names of said persons or entities when that information becomes readily available.

13.     Plaintiff is informed and believes each Defendant was the agent and alter ego of the other Defendants, at all relevant times alleged herein, and committed the acts or omissions described below with each of the other Defendants' actual and apparent authorization, approval, ratification and direction.

14.     This is an action for willful infringement of AKF's copyrighted design logo, 17 U.S.C. § 101 *et seq.*; for federal unfair competition and false designation of origin, 15 U.S.C. § 1125(a); for violations of California's false advertising law (Cal. Bus. & Prof. Code § 17500 *et seq.*) and California's unfair competition law (Cal. Bus. & Prof. Code § 17200 *et seq.)*; and for contributory copyright infringement and contributory trademark infringement.  This Court has subject matter jurisdiction over AKF's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  Jurisdiction for the related state-law claims is based upon 28 U.S.C. §§ 1338(b) and 1367. Personal jurisdiction over defendants is addressed in the *Statement Of Facts* section below.

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(a).  AKF has its principal place of business in this Judicial District; the Ontario Facility described below is also located here; Plaintiff's damages occurred here; and Leaf of Vape regularly and systematically does business here. Venue in this Judicial District also is proper because a substantial part of the events giving rise to the claims in this action occurred in this Judicial District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF FACTS

### A. THE COMMERCIAL SUCCESS OF PLAINTIFF'S CAKE™ DELTA-8 PRODUCTS

16. AKF's Cake™ brand is recognized as the market leader in high-quality hemp-derived Delta-8 vaping products.

17. Prior to launching Cake™, AKF's co-founder James Clelland launched and operated other very successful brands in the vaping industry. An artist, designer, and experienced marketer, Clelland's interest in vaping products began with a desire to quit smoking cigarettes. By the age of 28, Clelland developed his first successful brand called "Dotmod." Dotmod's sales grew to approximately $20 million annually utilizing Clelland's designs and logos, and grassroots or "viral" social media marketing. His passion, hard work and distinctive designs and formats contribute to the success and popularity of AKF's brands.

18. AKF launched the Cake™ branded Delta-8 products at the CHAMPS Trade Show in Orlando, Florida in October 2020. While there were other Delta-8 products at the trade show, Cake™ stood out through its appealing branding and high-quality disposable product. Demand for Cake™ products has been overwhelming. For the twelve-month period ending October 2021, revenue from sales of authentic Cake™ branded Delta-8 products in the U.S. market exceeded millions of dollars per month.

19. By virtue of Cake™'s marketplace success, AKF has established substantial and widespread consumer goodwill in the Cake™ mark, trade name, and designs. Consumers of Cake™ products associate AKF's marks and designs with high-quality, innovative and well-tested products.

20.     AKF takes seriously its intellectual property rights in the Cake™ brand and actively polices them, including through anti-counterfeiting activities of the type that uncovered the sales of counterfeit products described in this Complaint.

## B.     AKF'S COPYRIGHTED CAKE DESIGN LOGO

21.     AKF is the owner of registered copyrights for its Cake design logo in the U.S. and China.

22.     AKF's Cake design logo bearing U.S. Copyright Registration No. VA 2-247-632, attached hereto as **Exhibit A,** is an original work of authorship protected by the Copyright Act.  AKF is the registrant and rights holder to the copyright in this work.

23.     AKF's copyrighted cake design logo bearing China Copyright Registration No. Guo Zuo Deng Zi-2021-F-00163270, attached hereto as **Exhibit B**, is an original work of authorship.

24.     AKF is the registrant and rights holder to the copyright in this work:



25.     AKF's copyrighted cake design logo is prominently displayed on all of AKF's authentic Cake ™ products.

26.     Without the consent, approval, or license of AKF, Defendants have purchased, distributed, offered for resale, and sold infringing reproductions of AKF's Cake™ branded products, including unauthorized reproductions of AKF's copyrighted cake design logo:

INITIAL COMPLAINT          CASE

1
2
3
4
5




6 **AKF's Copyrighted Design Logo     Defendants' Unauthorized Reproductions**

7      27.    Defendants continue to engage in this unlawful conduct.  These

8 activities have infringed and are continuing to infringe a valid, federally registered

9 copyright in AKF's work.

10

11 **C.     PLAINTIFF'S TRADEMARK RIGHTS, DESIGNATION OF ORIGIN AND TRADE DRESS IN CAKE™**

12

13      28.    AKF has also established considerable trademark rights including

14 designation of origin and trade dress in its Cake™ design logo, stylized "Cake"

15 lettering, and unique product packaging.

16      29.    Without the consent, approval, or license of AKF, Defendants have

17 purchased, distributed, offered for resale, and sold infringing reproductions of

18 AKF's Cake™ products, including unauthorized reproductions of AKF's design

19 logo, stylized lettering, and other indicia of origin such as product packaging and

20 trade dress.

21      30.    AKF has pending applications for registration of the Cake™ marks

22 before the United States Patent and Trademark Office, for use in connection with

23 electronic cigarettes, electronic cigarette refill liquids and cartridges, electronic

24 cigarette batteries, and electronic cigarette chargers, including as follows:

25

| Mark | Date of application | U.S. serial number |
|------|---------------------|--------------------|
| **CAKE** | DECEMBER 21, 2020 | 90399839 (CLASS |

26
27
28

| | | 034) |
|---|---|---|
| **CAKED** | MARCH 17, 2021 | 90584363 (CLASS 034) |
| **CAKED8** | MARCH 17, 2021 | 90584410 (CLASS 034) |
|  | MARCH 22, 2021 <br> May 2, 2021 | 90594523 (CLASS 034) <br> 90686598 (Class 009) |
|  | MARCH 22, 2021 <br> April 5, 2021 | 90594382 (CLASS 034) <br> 90624745 (Class 009) |
| **EAT CAKE** | MARCH 25, 2021 | 90603633 (CLASSES 009 AND 034) |
|  | AUGUST 16, 2021 | 90885204 (CLASS 034) |
| **CAKE 10\|10** | JUNE 29, 2021 | 90801941 (CLASS 034) |

31.    Attached hereto as **Exhibits C through J** are true and correct copies of the printouts of the Trademark Status & Document Retrieval pages for the above serial numbers.

32.    AKF currently owns registrations of its "Cake" stylized trademark and design logo trademark issued by China, Mexico, Russia and Australia.  AKF's design logo trademark bears China Registration No. 55058687 and International Registration No. 1604339 with grants of protection by designee country Australia; and AKF's "Cake" stylized trademark bears Mexico Registration No. 2574865.

33.    AKF also owns pending trademark applications for registrations of its "Cake" stylized mark and design logo mark in Canada, the European Union, Hong Kong, Vietnam, Brazil, Switzerland, Columbia, Indonesia, Israel, Korea, Japan, Malaysia, Norway, New Zealand, Philippines, Singapore, and Thailand.  Attached hereto as **Exhibit S** is a schedule summarizing all AKF's Cake related trademark registrations and pending applications domestically and abroad.

34.    Since no later than October 23, 2020, AKF has continuously used one or more of the marks on its products in commerce.  To this day, all of AKF's Cake™ products bear one or more of the above-mentioned marks, as illustrated by the example below:



35.    The Cake marks are distinctive and serve solely to identify and promote AKF's genuine products and well-known brand.

36.    AKF has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand.

37.    AKF sells its products through its affiliated company WM Wholesale and a carefully authorized network of Authorized Distributors.

38.    Through its predecessors' and its licensees' widespread and substantially exclusive use of the Cake™ mark and related marks, AKF also owns

significant common law rights in the marks, which are not limited to the goods or services for which the marks are pending registration.

### D.   DEFENDANTS WERE REGULAR CUSTOMERS OF PLAINTIFF AKF AND DID REGULAR AND SYSTEMATIC BUSINESS IN CALIFORNIA SINCE 2020.

39.   Leaf of Vape regularly and systematically purchased authentic Cake™ branded Delta-8 products from AKF beginning 2021, usually placing several significant orders each month.  For example, it placed orders of $500,000 and $1 million in May and June 2021, among other substantial orders thereafter.  Attached as **Exhibit R** are a sampling of proof of payment for such transactions. These transactions and shipments were made in California, and invoices were sent from California. Leaf of Vape's regular and systematic purchase transactions and supply shipments wedded Leaf of Vape to the California forum. Leaf of Vape's regular, systematic and repeated transactions with AKF were lawful and AKF supplied authentic Cake™ branded Delta-8 products to Leaf of Vape in reliance on its continuing lawful business.

40.   Additionally, Leaf of Vape is a major national distributor and supplier of numerous brands of smoke shop industry products, including Leaf of Vape's own brand of Delta-8 products called "Flying Monkey".  Leaf of Vape regularly and systematically sells and distributes its smoke shop products, including its own Flying Monkey brand Delta-8 products, into the state of California.  Between August 2021 and February 2022, Leaf of Vape unlawfully competed with AKF by requiring its customers to purchase certain quotas of Flying Monkey Delta-8 products with every purchase of Cake branded Delta-8 products.

1

2

## THE ONTARIO FACILITY WHERE COUNTERFEITING AND UNLAWFUL DISTRIBUTION BY DEFENDANTS BEGIN.

3

4

5

6

7

8

9

10

41.    Nonparties LCF Labs Inc., related individuals and affiliated entities (together, "**LCF**") operate the facility at 895 S. Rockefeller Avenue, Ontario, CA 91761 (the "**Ontario Facility**").  The Ontario Facility is an industrial manufacturing and assembly plant, warehouse and shipment fulfillment facility. It includes mixing laboratories, custom labeling and packaging machinery, and other fixed assets required to mass-produce Delta-8 products like AKF's Cake™ branded products.  LCF promotes itself as "one of the leaders in So-Cal for producing and white labeling…e-juice."[1]

11

12

13

14

15

16

17

18

42.    Nonparties ALD Group, Limited and Shenzhen CF Technologies Co., Ltd are corporate entities incorporated under the laws of China which conduct business in the USA (together "**ALD Group**"). ALD Group manufactures counterfeit Cake™ branded products and their component parts in China, sells them to LCF, and ships them to the Ontario Facility.  At the Ontario Facility, counterfeit Cake™ branded Delta-8 products are then manufactured, assembled, inventoried, packaged, distributed and shipped out to the Cake Counterfeiting Network, including Defendants herein.

19

20

21

22

23

24

25

43.    In May 2021, LCF CEO "**Que**" first introduced himself to AKF's co-founder James Clelland and offered to "assist" AKF with its ongoing investigation of the Cake Counterfeiting Network. Between June and August of 2021, in various telephone calls, texts and in-person meetings between Que and AKF's principals, Defendants offered to broker an ostensibly lucrative, multimillion-dollar inventory procurement deal between AKF and ALD Group, purportedly to assist AKF in meeting exploding market demand for its authentic Cake™ branded Delta-8

26

27

28

---

[1] LCF website, *available at* https://www.lcflabs.com/ (last visited Dec. 5, 2021).

1 products, and to eliminate or meaningfully curb the Cake Counterfeiting Network's

2 access to AKF's well-established consumer base.

3

### E.    DISCOVERY OF A PATTERN OF WRONGDOING AND CEASE AND DESIST LETTERS.

6    44.    In early August 2021, AKF discovered that LCF, ALD Group and

7 Defendants secretly launched their own infringing "PIE" brand line of Delta-8

8 vaping products ("**PIE**").  Instead of facilitating AKF's multimillion-dollar

9 inventory procurement deal with ALD Group on behalf of AKF, as promised, LCF

10 and ALD Group quickly mass-produced -- in China and the Ontario Facility --

11 counterfeit Cake™ branded products. They recruited Defendants and fraudulently

12 palmed off PIE brand devices and packaging as AKF's "latest" affiliated spinoff

13 brand, as if they were manufactured, sponsored and endorsed by Plaintiff as a new

14 Cake™ branded Delta-8 product.

15    45.    LCF, ALD Group and Defendants distributed and sold the PIE brand

16 in California and this Judicial District, supplying distros in this Judicial District in

17 particular.

18    46.    In a series of letters dated August 3, 2021, AKF's counsel sternly

19 admonished LCF, Defendants and other known distributors affiliated with PIE to

20 cease and desist all unlawful, unauthorized sales and promotion of the infringing

21 PIE branded products, and to comply with a series of demands, in writing, or AKF

22 would initiate legal action against them (the "**August 3 Cease and Desist**

23 **Letters**").  True and correct copies of the August 3 Cease and Desist Letters to

24 LCF, Defendant Leaf of Vape and non-party Dr. Haze are attached hereto as

25 **Exhibit K**.

26    47.    The August 3 Cease and Desist Letters were effective immediately. In

27 addition, the August 3 Cease and Desist Letter identified Plaintiff AK Futures, LLC

28 as the owner of Cake™ branded Delta-8 products.  They sought among other things

1  to end Defendants' willful infringement of AKF's Cake™ branded Delta-8
2  products.

3      48.    Public documents showed that Plaintiff AK Futures, LLC is located in
4  California and in particular, in this Judicial District, and Defendants had actual
5  knowledge this was the case from their previous purchase transactions and
6  shipments of authentic Cake™ branded Delta-8 products. In addition, Defendants
7  had met Plaintiff CEO James Clelland at one or more trade shows and so was well
8  aware that their counterfeit sales of PIE in California would come to his attention
9  and expose them to court action in California.

10     49.    Throughout the remainder of August 2021, AKF reasonably believed
11  Defendants acquiesced with AKF's demands in the August 3 Cease and Desist
12  Letters.  In September and October 2021, however, AKF and its investigators grew
13  suspicious that LCF, ALD Group and Defendants continued to manufacture,
14  market, distribute, and sell unauthorized, inauthentic counterfeit Cake™ branded
15  Delta-8 products, in willful disregard of AKF's stern admonishments and demands
16  in the August 3 Cease and Desist Letters.

17     50.    For example, on several occasions in late August and early September
18  2021, several of AKF's authorized distributors independently reported to Clelland
19  that Que and LCF claimed to be the "founding owner" and manufacturer,
20  respectively, of Cake™ branded Delta-8 products. These claims were made during
21  in-person meetings and conversations with Delta-8 wholesalers and distributors at
22  tradeshows and similar events.  These were fraudulent misrepresentations which
23  AKF's authorized distributors clearly witnessed and overheard while standing
24  nearby.

25     51.    Then, in September or October 2021, AKF discovered LCF
26  surreptitiously and unlawfully launched the "www.cakehemp.com" website, and for
27  a period of several months, unlawfully utilized that website to actively and
28  continuously market and advertise, and presumably distribute and sell, unauthorized

counterfeit Cake™ branded Delta-8 products.  According to the applicable domain name registry, Defendants registered the www.cakehemp.com domain name anonymously, but Clelland specifically recalled several lengthy and detailed discussions with Defendant Que in or around June 2021 regarding "www.cakehemp.com".  Specifically, during an in-person meeting and several follow-up cellphone communications in June 2021, Que recommended to Clelland that AKF launch a Cake™ branded website to increase sales via online marketing and e-commerce.  Que also suggested AKF utilize the website to post AKF's product testing results for consumers to access.  Clelland declined and informed Que that AKF management expressly resolved not to launch any form of Cake™ affiliated website and resolved instead to avoid all e-commerce and online marketing for its premium authentic Cake™ brand.  Instead, AKF reserved online marketing of authentic Cake™ products as a privilege for certain key authorized distributors only, as consideration for their services.  Que encouraged Clelland to reconsider, and then specifically stated, "www.cakehemp.com is available" and "it is great domain."  Then he proceeded to show Clelland a mock-up of the www.cakehemp.com website, which Que claimed was ready to "go live."   Clelland wrote Que a stern text demanding that Que "Please take that site down immediately."  When Clelland discovered the www.cakehemp.com website was alive and operating in or around late September 2021 or early October 2021, AKF immediately suspected Defendants actively participated in the Cake Counterfeiting Network.

52.    On September 28, 2021, AKF, through its counsel, sent another letter to LCF and expressly admonished them once again: (a) that LCF and their distributors were counterfeiting and willfully infringing AKF's Cake™ branded products; (2) that LCF and its distributors were not authorized by AKF to produce Cake™ branded products; (3) that AKF specifically prohibited LCF and its distributors from using and willfully infringing upon AKF's intellectual property

1   for any purpose whatsoever; and (4) that LCF and its distributors must cease and

2   desist immediately or AKF would initiate legal action against them (the

3   "**September 28 Cease and Desist Letter**"). A true and correct copy of the

4   September 28, 2021, Cease and Desist Letter is attached hereto as **Exhibit L.**

5       53.    Plaintiff is informed and believes that all Defendants (not just LCF)

6   had actual or constructive knowledge of the September 28 Cease and Desist Letter

7   and their contents. The letter itself demanded that LCF inform all of its distributors

8   or end-users, which includes defendant, of the infringement of the Cake brand and

9   that all counterfeit products be removed from the market.   Defendants had actual

10  copies of the Letters, or at least knew the gist of the September 28 Cease and Desist

11  Letters, including that:

12          As you know, LCF Labs, Inc. ("LCF") and its distributors are not

13      authorized by AKF and they ***are not*** affiliated in any way with authentic

14      CAKE products. AKF recently learned LCF is promoting and selling

15      unauthentic Cake-branded products. Please be advised AKF intends to

16      vigorously pursue its claims against LCF and any other parties involved in

17      manufacturing and distributing counterfeit Cake-branded products.

18          LCF's sale and distribution of the Cake-branded products constitutes

19      trademark and trade dress infringement in violation of the Lanham Act, 15

20      U.S.C. § 1125, et seq.; as well as unfair competition under federal and state

21      laws. Accordingly, LCF and its affiliates now are exposed to substantial

22      liability and damages, including but not limited to lost profits, disgorgement

23      of profits, actual damages, and attorneys' fees, and will be referred to

24      authorities for criminal prosecution if appropriate.

25          AKF hereby demands that you **** [i]nform all distributors and end-

26      users who received the counterfeit Cake-branded vaping products that such

27      products were unauthorized and infringe upon the CAKE Marks and trade

28      dress; and [¶] [r]equest that any distributor or end-user to whom you sold or

1    otherwise conveyed counterfeit Cake-branded products remove such

2    products from the stream of commerce. (*Emphasis in original*.)

3         54.    Leaf of Vape was not dissuaded, and instead expanded its

4    counterfeiting activities beyond the PIE brand.  By the end of 2021, Leaf of Vape

5    had switched its purchases of ***all Cake™ branded Delta-8 products*** from AKF –

6    the authentic producer – to LCF the counterfeiter.  Leaf of Vape knew that LCF

7    was producing counterfeit goods at the Ontario Facility because it had received the

8    August 3 Case and Desist Letter and at least knew about the September 28 Cease

9    and Desist Letter.  For example, it placed an October 7, 2021 order with LCF**.**  This

10   was only one among many regular, systematic and repeated transactions with LCF,

11   for the purchase of goods known to be counterfeits. These transactions again

12   wedded Leaf of Vape to the California, but here with a different supplier of Cake™

13   branded Delta-8 products located in this Judicial District.  As with the AKF

14   purchases, Defendants' purchases from LCF were invoiced and paid in California;

15   shipments came from the Ontario Facility in this Judicial District. Attached as

16   **Exhibit M** is a sampling of such transactions in October 2021.

17        55.    Defendants are a necessary part of a national chain for distribution and

18   sale of counterfeit Cake™ branded Delta-8 products manufactured, assembled,

19   inventoried, packaged, distributed and shipped by other participants in the Cake

20   Counterfeiting Network.

21

22   **F. ACTIONS TAKEN TO ENFORCE CEASE AND DESIST LETTERS.**

23        56.    Defendants failed to meaningfully respond in any way to the August 3

24   and September 28 Cease and Desist Letters.  Having received no response from

25   Defendants, AKF attorneys caused Digital Ocean, the host of

26   "www.cakehemp.com," to immediately take down the website, and AKF instructed

27   its investigators to discover additional clear and convincing evidence of

28

Defendants' infringing activities, as quickly as possible, in contemplation of this lawsuit.  In November 2021, AKF's investigators ultimately discovered such evidence.

57.     Specifically, on November 4, 2021, AKF investigators successfully arranged to meet LCF CEO "**Que**" at LCF's Ontario Facility, ostensibly as businessmen, to gather evidence and information regarding the nature and scope of LCF's infringing and unlawful business activities, if possible.  During their visit, AKF's investigators observed and photographed LCF's large industrial manufacturing facility, outfitted with multiple freight loading bays in the rear of the building, where several semi-trucks were parked, and a suite of executive offices at the front of the building.  AKF's investigators ultimately entered Defendants' suite of executive offices and interviewed LCF CEO Que and one of Defendants' associates (the "**LCF Agent**").

58.     Among other facts, LCF CEO Que admitted the following facts to AKF's investigators during their "meeting" and interview.

- Defendants have been manufacturing Cake™ branded Delta-8 products on a continuous and ongoing basis *for the last six months* (without AKF's consent or authorization) and continue to do so today in willful disregard of AKF's intellectual property rights and stern warnings in the September 28 Cease and Desist Letters.
- Cake™ Delta-8 products were among the first Delta-8 products that Defendants started manufacturing.
- Defendants routinely manufacture and distribute counterfeit Cake™ disposable devices at a rate of *125,000 units per day.*[2]

---

[2] Defendants typically charge their Authorized Distributors $9-10 per unit pricing for such products.  Thus 125,000 units per day of the Cake™ disposable devices would sell at wholesale for more than $1 million per day.

INITIAL COMPLAINT          CASE

- Defendants do not "close" or "shut down," and have a second shift that just started. And

- Defendants work with a company in China, shipping them the pieces, which the Chinese company in turn assembles and ships back to Defendants as completed product.

59.  During their conversation, LCF CEO Que acknowledged AKF's Cake™ branded Delta-8 products have "become extremely popular" and that consumers "can find [them] anywhere."  He also acknowledged Cake™ branded Delta-8 products are "one of the most recognizable Delta-8 brands out there."

60.  In addition, AKF's investigators spoke to the LCF Agent separately during their visit to the facility.  The LCF Agent expressly and independently confirmed and admitted Defendants have been manufacturing unauthorized replicas of AKF's Cake™ branded disposable devices "for the last six months."

61.  AKF's investigators also observed and photographed a case of Cake™ branded disposable pens openly displayed on the LCF Agent's desk.  AKF's investigators examined the products closely and readily determined they were counterfeit replicas of AKF's authentic Cake™ branded Delta-8 products for irrefutable reasons.  The inauthentic products made by Defendants also utilize replicas of AKF's Cake™ branded packaging, including reproductions of AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress.  The similarities between AKF's authentic product and the counterfeit products sold by Defendants are striking:

 

**(Authentic Cake™ Packaging)  (Packaging sold by Defendants)**

62.     Defendant Leaf of Vape Distro is an Addison, IL chain of "distros" and part of the Cake Counterfeiting Network. With full knowledge of its own wrongdoing –that it was purchasing counterfeit Cake™ branded Delta-8 products and the source of the counterfeits was the Ontario Facility – Leaf of Vape is invoiced from the Ontario Facility, makes payments to LCF in California, and accepts delivery of Cake counterfeits from the Ontario Facility.

63.     Defendants then store and organize the counterfeit Cake™ branded Delta-8 products for sale to consumers, or re-sale to smaller "distros" in its geographic area. They add value to the Cake Counterfeiting Network because of their ability to purchases large lots of Cake™ counterfeits, and then sell them to consumers and smaller "distros" (who in turn sell to consumers in their smaller area of operations).  They pay a wholesale price for the large lots of counterfeits, and then mark that price up for sale to the consumers or re-sale to smaller distros.

64.     Thus, separate from the PIE counterfeit brand, Defendants continuously and systematically (i) have made regular purchases of counterfeit

1  Cake™ branded Delta-8 products produced at and shipped from the Ontario

2  Facility; and (ii) received shipments of counterfeit items from the Ontario Facility,

3  for sale outside of California, all since receipt of (or at least knowledge of) the

4  August 3 and September 28 Cease and Desist Letters.[3]

5

6  **E.   DEFENDANTS' COUNTERFEITING DRIVES PLAINTIFF AKF'S**

7  **LEGITIMATE PRODUCT LINES OUT OF THE MARKET.**

8      65.   By merit of its actions and conduct as part of the Cake Counterfeiting

9  Network, Defendants either directly caused each cause of action when named

10  below; or acted as aiders and abettors of such violations of law; or acted as a co-

11  conspirators in such violations of law, and so is jointly and severally liable for all

12  damages from each such cause of action.

13      66.   At or around the same time the AKF Investigators' report revealed the

14  pervasiveness of Defendants' counterfeiting activities, AKF's Authorized

15  Distributors also first reported to AKF CEO Clelland that "overnight" they were

16  unable to sell any Cake™ 510 Carts or Cake™ Gummies in any market.  According

17  to AKF's Authorized Distributors, they could not sell Cake™ 510 Carts or Cake™

18  Gummies expressly because wholesalers and distributors throughout the Delta-8

19  market all reported previously purchasing their entire monthly requirements of

20  these products from an unknown, unauthorized manufacturer(s), at much lower

21  prices.

22      67.   Currently, AKF no longer can cost-effectively manufacture Cake™

23  Carts or Cake™ Gummies, given AKF's expensive quality control and testing

24

25  _____

26      [3] Defendants charge $10 per unit for their counterfeit Cake™ branded

27  devices, so Defendants' illicit, unlawful counterfeiting activities generate over $1

    million per day.

28

requirements.  AKF stopped all production of these two product lines within the past month as a result.

68.     Based upon (a) Clelland's discovery of the www.cakehemp.com website, which featured Cake™ 510 Carts prominently; (b) the AKF Investigators' report, described above, wherein LCF admittedly produces over 125,000 units daily of counterfeit, inauthentic, unauthorized Cake™ branded Delta-8 products; (c) AKF's Authorized Distributors' reports regarding sales inability to sell *any* of AKF's popular product lines, Cake™ 510 Carts and Cake™ Gummies; and (d) Clelland's past recollections of events involving these Defendants, as alleged herein, Plaintiff now reasonably believes LCF and Defendants manufacture, sell, distribute and market to the consumer counterfeit Cake™ Delta-8 products.

## F.     THE FEBRUARY 5 IMPOUNDMENT.

69.     On Saturday, February 5, 2002, 11 US Marshalls, assisted by 15 representatives of Plaintiff, successfully effectuated this Court's January 18 Seizure Order *[Case No. 8:21-cv-02121, Dkt 14]* at the Ontario Facility. Working for 13 straight hours with a fleet of 53-foot tractor-trailers and other vehicles, the 11 Marshals and 15 representatives impounded 137 pallets of counterfeit Cake™ branded goods, containing 4.18 million items with a retail value estimated at $51.6 million (the "**Impoundment Items**").

70.     The Impoundment Items utilized replicas of AKF's Cake™ branded packaging, including reproductions of AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress.  In addition, the products assembled and warehoused at the Ontario Facility include a number of products that Plaintiff does not make, but nonetheless bear the AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress.  The staggering volumes filled more than two full aisles stacked in rows over 30 feet high within the Ontario Facility. The 137

pallets comprising the Impoundment Items filled 10 commercial shipping containers.  Most pallets contained 24,000 items.

71.     Attached as **Exhibit N** is *Spreadsheet 1 Pallet-by-Pallet Accounting of February 5 Impoundment Items*. According to *Spreadsheet 1*, approximately 4,186,874 items were seized with a retail value of $51,697,105. *Spreadsheet 1 Pallet-by-Pallet Accounting* was prepared by Plaintiff's five-person team which spent four business days making a pallet-by-pallet accounting of the February 5 Impoundment Items.

72.     For the items in *Spreadsheet 1 Pallet-by-Pallet Accounting.* their packaging contains Plaintiff's Cake™ copyright logo mark, trademark and trade dress. Millions of paper packaging and QR labelling counterfeiting Plaintiff's authentic Cake-TM copyright logo mark, trademark and trade dress were found inventoried for continuing use.

73.     *Spreadsheet 1 Pallet-by-Pallet Accounting* contains retail values for authentic Cake™ products, which the counterfeit products are designed to replicate and replace in sales to consumers.  The values were supplied by Plaintiff's CEO James Clelland, who participated in the pallet-by-pallet accounting.

74.     Attached as **Exhibit O** is *Spreadsheet 2 Distros In National Cake Counterfeiting Network*, there are approximately 251 "distros" that have been identified by Plaintiff's national investigative efforts in the past year, including Defendants. The February 5 Impoundment Items include pallets so close to shipment that they were already marked with the shipping information of Defendants and others.

75.     The February 5 Impoundment Items seem typical for a manufacturing, assembly, and inventory for distribution to the national Cake Counterfeiting Network, including Defendants.  It includes pallets ready to ship; pallets of inventory that might be shipped at a later date, and manufacturing work-in-process items being assembled for inventory and later shipment.

76.     Attached as **Exhibit P** is a true and correct copy of *Spreadsheet 3 Defendants' Sales and Shipments After August 3,* which details the sales and shipments after receipt of the August 3 Cease and Desist Letter. Two binders seized contained detailed shipping information, usually in the form of packing slips or bills of lading.  They also contained invoices for particular shipments made. More invoices and shipping documents were obtained from "mirror imaging" Defendants' server and the 16 computers.

77.     Attached as **Exhibit Q** is a  true and correct copy of the *Cake Inventory Lists After August 3,* which demonstrates that Defendants regularly manufactured new inventory and updated their inventory lists with ever-changing amounts after August 3.  The inventory lists for the months of October, November and December, 2021 are captured.

78.     The similarities between AKF's authentic product and the counterfeit products seized at the February 5 Impoundment are striking. These include the following.

79.     **Cake "New" 2-gram Devices**, but there is no such product made by Plaintiff.  Nonetheless, AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress are used in Defendants' Cake "New" 2-gram Devices.

80.     **Cake XL**, but there is no such product made by Plaintiff.  Plaintiff stopped manufacturing Cake XL over one year ago because of counterfeiting. Nonetheless, AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress are used in Defendants' CAKE XL product line.

81.     **Nicotine-based Products**, even though Plaintiff does not produce nicotine-based products. LCF CEO Que is on the FDA Anti-Nicotine Watch List and subject to the prohibitions in the FDA Anti-Nicotine Watch List Letter. Nonetheless, LCF and Defendants manufacture and sell a line of nicotine-based products that use AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress.

82.     **Delta-8 Products Containing Abundant Delta-9 THC Chemicals**, despite federal standards that strictly control psychoactive Delta-9 THC chemicals and require them to be less than 0.03% of any Delta-8 vaping product. Plaintiff AKF has become a #1 best-seller by following strict federal requirements and utilizing comprehensive and expensive quality control standards and methods to do so.  Testing in the past has confirmed that LCF and Defendants' Delta-8 product line contains abundant Delta-9 THC psychoactive chemicals and is likely marketed to children.

83.     **Bogus Bar Codes**. Further, LCF and Defendants' Delta-8 products are labeled with bar codes that purport to link to testing results posted on a bogus "cakehemp.com" website which no longer exists.  The bar code reference is meant to assure the consumer that test results show Delta-9 THC chemicals below federal standards; here they link to a website that does not exist.  AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress are used in Defendants' Delta-8 products containing abundant Delta-9 THC chemicals.

84.     The February 5 Impoundment also seized a cache of business records, invoices, digital information and digital devices relevant to the Impoundment Items. The business records confirm that (i) LCF and Defendants in fact regularly and systematically manufactured, marketed, distributed, and sold unauthorized replicas of AKF's Cake™ branded disposable devices and other goods; (ii) LCF and Defendants actively participate in the national Cake Counterfeiting Network, which appears to depend on the Ontario Facility as well as ALD Group in China; (iii) LCF and Defendants are acting in concert with parties this Court has already enjoined and in contempt of its court orders in related cases; and (iv) the national Cake Counterfeiting Network is active at least in California, Texas, Florida, Ohio, New Jersey, Florida and China.

85.     Business records, invoices, digital information and digital devices seized at the February 5 Impoundment also confirm the following facts.

86.    First, LCF and Defendants have been manufacturing and selling Cake™ branded products on a continuous and ongoing basis for at least 10 months, and they continued to do so through February 5, 2022.

87.    Second, LCF and Defendants act in willful disregard of AKF's intellectual property rights and stern warnings that they have no authority to use AKF's copyrighted stylized design logo and AKF's Cake™ mark and trade dress. This was explained in multiple Cease & Desist Letters.

88.    Third, LCF and Defendants' unauthorized, inauthentic counterfeit Cake™ branded Delta-8 products appear to be the only Delta-8 products LCF and Defendants have ever distributed and sold in interstate commerce since abandoning sale of authentic Cake™ branded Delta-8 products.  In other words, 100% of LCF and Defendants' sales of Cake™ branded Delta-8 products unlawfully infringe Plaintiff's intellectual property rights.

89.    Fourth, evidence indicates that LCF and Defendants continuously and regularly manufacture, distribute and sell counterfeit Cake™ disposable devices at a rate of at least 125,000 units per day. The 125,000 units of the Cake ™ disposable devices generates over $1 million per day.

90.    Fifth, LCF and Defendants have been given written notice of this Court's judgments and injunctions against counterfeiting by defendants Boyd Street Distro, Smoke Totes and Green Buddha, among others. Nonetheless, business records, invoices and digital information show that LCF and Defendants supplied at least some of these enjoined parties after the date of written notice with counterfeit goods.

91.    And sixth, since the February 5 Impoundment, Plaintiff's sales have skyrocketed.  The 75% increase in year-over-year sales could have no possible explanation, other than that the February 5 Impoundment dried up the supply of counterfeit goods and drove retail outlets in the Cake Counterfeiting Network to buy the more expensive authentic Cake ™ branded goods.  Plaintiff recognizes a

substantial number of new purchasers since the February 5 Impoundment that were long suspected of belonging to the Cake Counterfeiting Network.

## H. CONSUMER CONFUSION AND HARM CAUSED BY COUNTERFEITS.

92. LCF and Defendants, as part of the Cake Counterfeiting Network, are actively participated in manufacturing, importing, assembling, inventorying, packaging, distributing, shipping, advertising, marketing, offering to sell, and have sold, shipped and distributed large volumes of vaping products that bear confusingly similar imitations of the Cake™ marks. Defendants also falsely hold themselves out as an "authorized distributor" of authentic Cake™ branded Delta-8 products, and have either manufactured, distributed, shipped or sold substantial volumes of unauthorized Cake™ branded Delta-8 products in interstate commerce since May 2021.

93. AKF has not authorized any of LCF or Defendants to manufacture, import, assemble, inventory, package, distribute, ship, advertise, market, offer to sell, or to sell, ship and distribute sell any Cake™ products or any products bearing the Cake™ logo marks, unregistered trademarks, trade dress or similar designation of origin. AKF also has not granted any of Defendants a license to use any of the Cake™ marks.

94. Many of Defendants' infringing products utilize fake "Cake™" branded stickers with bar codes. Through these activities, Defendants are intentionally deceiving customers into believing that they are receiving authentic Cake™ branded Delta-8 products developed, manufactured, quality controlled, screened and tested by AKF:

//

//

1 //

2 //

 

**Authentic Cake ™ Products          Unauthorized Cake "COA"**

**Stickers Linked to Cakehemp.com via Barcodes.**

95.     In addition to being inauthentic, the quality, performance, and safety of Defendants' products are unknown.  AKF regularly tests its products for potency, which is part of AKF's expensive quality control system.  It also periodically conducts full panel testing for pesticides and other contaminates.  AKF is unable to screen or test Defendants' products before they reach consumers.  The inauthentic products are not subject to AKF's quality control standards.  They may be made or assembled using unknown or unsafe products or components, causing harm to consumers and those around them.

96.     Consumers are harmed by Defendants' unlawful conduct because they receive inauthentic products, which are at risk of being of lower quality, less reliable, and less safe than the high-quality, genuine Cake™ branded Delta-8 products they expect.

97.     Consumers and the public are likely to associate any negative or unsafe qualities of these inauthentic products with AKF and the Cake™ marks. These negative associations cause irreparable harm to AKF and damage the reputation of the Cake™ brand, in which AKF has invested heavily.

98.    Defendants' distribution and sales of infringing product also deprive AKF of revenue and profits from sales of its authentic Cake™ branded Delta-8 products.

99.    AKF has not authorized Defendants to manufacture, advertise, distribute, or sell any Cake™ products or any products bearing the Cake™ marks. AKF also has not granted Defendants a license to use the Cake™ marks.

## I.    **PERSONAL JURISDICTION FACTS:  LEAF OF VAPE "MINIMUM CONTACTS" WITH CALIFORNIA AND ITS KNOWLEDGE THAT PLAINTIFF'S DAMAGED ARE HERE IN CALIFORNIA.**

100.   Defendant Leaf of Vape has both "systematic and regular contacts" with California necessary for general personal jurisdiction, as well as the "minimum contacts" with California sufficient to establish personal jurisdiction over Defendants and this dispute.

101.   Defendants' "systematic and regular contacts" began in 2021 with bi-weekly purchases of authentic Cake™ branded Delta-8 products from Plaintiff. These purchases were in substantial volumes totaling over $1 million per month and involved bi-weekly transactions in California.  Leaf of Vape purchased authentic Cake™ branded Delta-8 products from AKF.  It placed orders of more $1.5 million in May and June 2021, among other substantial purchases.  **Exhibit R**.

102.   Defendants' "systematic and regular contacts" continued as it switched its allegiance from Plaintiff as its supplier of Cake™ branded Delta-8 products, to LCF with whom it jointly produced, distributed and sold infringing PIE products. The PIE products were not only produced in this Judicial District, but they were sold here to Boyd Street Distro, among other customers in this Judicial District.

103.   Defendants' "systematic and regular contacts" continued through its regular purchases of counterfeit Cake™ branded Delta-8 products from the Ontario Facility.

104.   As a result of these "systematic and regular contacts", Defendants had actual and constructive knowledge that both Plaintiff AKF and the Ontario Facility were located in California and in particular in this Judicial District. Leaf of Vape knew that LCF was producing counterfeit goods because it received the August 3 Cease and Desist Letter and received or knew of the September 28 Cease and Desist Letter.  As a result, Leaf of Vape both "individually targeted" AKF in California and created Leaf of Vape's own contacts with the forum state (not just with AKF or LCF). By switching to LCF, it provided the market necessary for LCF to grow and sustain the Ontario Facility.

105.   Further Leaf of Vape continues to infringe in two ways.  Each purchase of known counterfeit goods is an infringement that occurred in California. These purchases were not random, isolated or fortuitous, but rather regular and systematic.  And the resale of the same counterfeits in Florida is a second infringement that occurred in Florida, but its effects were felt in California.  The California effects were not random, isolated or fortuitous.  And in both cases – the California purchases and the Florida resales – Leaf of Vape had actual knowledge of its connection to California.

## **FIRST CLAIM FOR RELIEF**

**(Copyright Infringement, 17 U.S.C. § 101 et seq., Against All Defendants)**

106.   AKF incorporates the allegations in paragraphs 1 through 104 above as if set forth fully herein.

107.   AKF's cake design logo bearing U.S. Copyright Registration No. VA 2-247-632, is an original work of authorship protected by the Copyright Act.  AKF is the registrant and rights holder to the copyright in this work with authority to sue to enforce its copyright in the work.

108.   Without the consent, approval, or license of AKF, Defendants have manufactured, distributed, offered for sale, and sold infringing reproductions of AKF's Cake™ products, including unauthorized reproductions of AKF's copyrighted cake design logo. These activities have infringed and are continuing to infringe valid, federally registered copyright in AKF's work.

109.   By merit of its actions and conduct, and as part of the Cake Counterfeiting Network, each Defendant either directly caused each cause of action; or acted as an aider and abettor of such violations of law; or acted as a co-conspirator in such violations of law, and so is jointly and severally liable for all damages from each such cause of action.

110.   The activities of Defendants have caused and continue to cause substantial injury to AKF, including irreparable harm for which there is no adequate remedy.

111.   Defendants' infringing activities were willful and performed in conscious disregard of AKF's rights.

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition And False Designation Of Origin, 15 U.S.C. 1125(A), Against All Defendants)

112.   AKF incorporates the allegations in paragraphs 1 through 110 above, as if set forth fully herein.

113.   Defendants' advertising, offering for sale, and sale of counterfeit or unauthorized Cake™ products bearing the Cake™ marks constitute false designations of origin and false descriptions and representations, and are likely to cause confusion, mistake, and to deceive consumers by creating the false impression that AKF and the Cake™ products are affiliated, connected, or

1  associated with Defendants or their goods, or that Defendants' products are

2  approved, licensed, endorsed, or sponsored by AKF.

3      114.  Defendants' acts constitute the use of a false designation of origin, a

4  false description, and a false representation that Defendants' goods are AKF's, are

5  identical to or interchangeable with AKF's goods, or are in some way approved,

6  sponsored, authorized by, or affiliated with AKF.

7      115.  With full knowledge of such falsity, Defendants have manufactured,

8  assembled, advertised, offered for sale or sold (and continue to do so) such

9  merchandise in interstate commerce, in such manner as to cause confusion or

10  mistake among the public and to deceive the public, resulting in Defendants' profit

11  and causing AKF great damage and injury.  Defendants' acts constitute deliberate

12  and intentional violations of Section 43 of the Lanham Act, and justify an award of

13  trebled damages.

14      116.  By merit of its actions and conduct, and as part of the Cake

15  Counterfeiting Network, each Defendant either directly caused each cause of

16  action; or acted as an aider and abettor of such violations of law; or acted as a co-

17  conspirator in such violations of law, and so is jointly and severally liable for all

18  damages from each such cause of action.

19      117.  Defendants' above-described conduct is causing irreparable harm to

20  AKF and the Cake™ brand, for which there is no adequate remedy at law.

21

22  **THIRD CLAIM FOR RELIEF**

23

**(California False Advertising, Cal. Bus. & Prof. Code § 17500,**

24

**Against All Defendants)**

25      118.  AKF incorporates the allegations in paragraphs 1 through 116 above as

26  if set forth fully herein.

27

28

1    119.   Defendants have knowingly and willfully made false or misleading

2    statements in connection with the sale of their inauthentic products.

3    120.   In advertising and promoting their products, Defendants knew or, with

4    the exercise of reasonable care, should have known, that their statements were false

5    and misleading.

6    121.   By merit of its actions and conduct as part of the Cake Counterfeiting

7    Network, each Defendant either directly caused each cause of action; or acted as an

8    aider and abettor of such violations of law; or acted as a co-conspirator in such

9    violations of law, and so is jointly and severally liable for all damages from each

10   such cause of action.

11   122.   As a direct, proximate, and foreseeable result of Defendants making

12   these false and misleading statements, AKF has suffered, and will continue to

13   suffer, irreparable harm to its individual brand, reputation and goodwill.  AKF has

14   no adequate remedy at law to compensate for these substantial injuries and is thus

15   entitled to injunctive relief.

16   123.   As a direct, proximate, and foreseeable result of Defendants making

17   these false and misleading statements, AKF has suffered and will continue to suffer

18   money damages in an amount to be proven at trial.

19   124.   This cause of action enforces one or more important rights affecting

20   the public interest and confers a significant benefit on the general public, or at least

21   the large class of persons interested in Delta-8 products, and so Plaintiff AKF is

22   entitled to an attorney's fee award under CCP § 1021.5.

23   //

24   //

25

26

27

28

INITIAL COMPLAINT          CASE

1

## **FOURTH CLAIM FOR RELIEF**

2

3

**(California Unfair Competition, Cal. Bus. & Prof. Code § 17200 *et seq.*,**
**Against All Defendants)**

4

5

125.   AKF incorporates the allegations in paragraphs 1 through 123 above, as if set forth fully herein.

6

7

126.   As stated above, Defendants' conduct is likely to cause confusion as to the origin, authorization, authenticity, and sponsorship of the vaping products being manufactured, imported, advertised, sold, and distributed by Defendants.  The above-described conduct of Defendants is intended to produce and has produced substantial profits for Defendants at the expense of AKF and to the detriment of the integrity of the Cake™ brand.

8

9

10

11

12

127.   By merit of its actions and conduct, and as part of the Cake Counterfeiting Network, each Defendant either directly caused each cause of action; or acted as an aider and abettor of such violations of law; or acted as a co-conspirator in such violations of law, and so is jointly and severally liable for all damages from each such cause of action.

13

14

15

16

17

128.   Defendants' above-described conduct constitutes unlawful, unfair and fraudulent business practices in violation of California Business & Professions Code sections 17200 *et seq.*

18

19

20

129.   AKF has lost money and suffered substantial injury as a result of Defendants' wrongful acts.  Defendants' misconduct also has caused, and is continuing to cause, irreparable injury to AKF for which there is no adequate remedy at law.

21

22

23

24

130.   This cause of action enforces one or more important rights affecting the public interest and confers a significant benefit on the general public, or at least the large class of persons interested in Delta-8 products, and so Plaintiff AKF is entitled to an attorney's fee award under CCP § 1021.5.

25

26

27

28

1

## **FIFTH CLAIM FOR RELIEF**

2

3

**(Contributory Copyright Infringement, 17 U.S.C. § 101 et seq.,**

**Against All Defendants)**

4

5

131.   AKF incorporates the allegations in paragraphs 1 through 129 above as if set forth fully herein.

6

7

132.   Each Defendant knew or had reason to know of the infringing activity of direct infringers LCF Labs, HomeSun, Que and ALD Group.

8

9

133.   Each Defendant intentionally and materially contributed to the direct infringers' infringing activity.

10

11

134.   The activities of Defendants described above have caused and continue to cause substantial injury to AKF, including irreparable harm for which there is no adequate remedy.

12

13

135.   Defendants' infringing activities were willful and performed in conscious disregard of AKF's rights.

14

15

16

## **SIXTH CLAIM FOR RELIEF**

17

18

**(Contributory False Designation Of Origin, 15 U.S.C. 1125(A),**

**Against All Defendants)**

19

20

136.   AKF incorporates the allegations in paragraphs 1 through 134 above, as if set forth fully herein.

21

22

137.   Each Defendant supplied goods or services to direct infringers LCF Labs, HomeSun, Que and ALD Group.

23

24

138.   Direct infringers used Defendant's goods or services to infringe in their false designations of origin and false descriptions and representations which are likely to cause confusion, mistake, and to deceive consumers by creating the false impression that AKF and the Cake™ products are affiliated, connected, or

25

26

27

28

INITIAL COMPLAINT          CASE

associated with them, or that the direct infringer's products are approved, licensed, endorsed, or sponsored by AKF.

139. Each Defendant knew or had reason to know that direct infringers would use its goods or services to infringe the plaintiff's trademark logo or to make a false designation of origin.

140. Each Defendant had direct control and monitoring of the goods or services used by the direct infringer to accomplish its infringement.

141. Each Defendant's above-described conduct is causing irreparable harm to AKF and the Cake™ brand, for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment and other relief in its favor and against Defendants as follows:

*A.* That Defendants, their officers, directors, agents, employees, representatives and all persons, firms and corporations in active concert or participation with any of them, be preliminarily and permanently enjoined from counterfeiting, infringing, distributing, or otherwise using without AKF's authorization the Cake™ marks and any AKF's copyrighted designs, by manufacturing or causing to be manufactured, importing or causing to be imported, reproducing or causing to be reproduced, purchasing or causing to be purchased, distributing or causing to be distributed, advertising or causing to be advertised, or offering for sale or selling, any counterfeit or infringing products bearing the Cake™ marks, or any confusingly similar mark;

*B.* Judgment in favor of AKF that Defendants infringed AKF's copyright rights under 17 U.S.C. § 101 *et seq.*;

*C.* Judgment in favor of AKF that Defendants competed unfairly with AKF and employed false designations of origin including product packaging and

trade dress, all in violation of AKF's rights under 15 U.S.C. § 1125 and California Bus. & Prof. Code § 17200;

**D.**    Judgment in favor of AKF that Defendants (other than ALD, Shenzhen CF Technologies and Mothership) made false and misleading statements and falsely and misleadingly advertised their counterfeit products, in violation of AKF's rights under California Bus. & Prof. Code § 17500;

**E.**    On the First Claim for Relief, AKF be awarded statutory damages for infringement of its registered copyright of up to $150,000 for willful infringement pursuant to 17 U.S.C. § 504(c) or, at AKF's election, an award of its actual damages incurred, including all profits of Defendants obtained in connection with their infringing activities, or in the alternative;

**F.**    On the Second Claim for Relief, Defendants be ordered, pursuant to Section 34 of the Trademark Act, 15 U.S.C. § 1116, to file with the Court and serve upon AKF's counsel, within 30 days of the entry of the injunctions and orders prayed for herein, a written report setting forth under oath and in detail the manner in which they have complied with the injunctions and orders requested herein;

**G.**    On the Second Claim for Relief, AKF be awarded up to three times the amount of actual damages sustained by it as a result of Defendants' acts, including any lost profits sustained by AKF or profits unlawfully realized by Defendants;

**H.**    On all claims for relief, (i) Defendants be required to deliver immediately to AKF for destruction all counterfeit or infringing merchandise bearing the Cake™ marks, or any confusingly similar mark or designation of origin; and (ii) the seizure and impoundment of the same as may be authorized by Section 34 of the Trademark Act [15 U.S.C. § 1116(d)(2) to (11)], 17 USC § 503 of the Copyright Act, Federal Rules Of Civil Procedure 64 and 65, and other relevant court rules or statutes;

**I.**    On all claims for relief, (i) Defendants further be required to deliver to AKF for destruction all computer files, digital files, computer discs, master copies,

print molds, dye cuts or other materials or instrumentalities used to manufacture counterfeit or infringing merchandise bearing the Cake™, as well as all labels, signs, prints, packages, receptacles, promotional and other material in their possession, custody or control that display or promote counterfeit or infringing merchandise bearing the Cake™ marks, or any confusingly similar mark or designation of origin; and (ii) the seizure and impoundment of the same as may be authorized by Section 34 of the Trademark Act [15 U.S.C. § 1116(d)(2) to (11)], 17 USC § 503 of the Copyright Act, Federal Rules Of Civil Procedure 64 and 65, and other relevant court rules or statutes;

*J.*     On all claims for relief, Defendants be ordered to provide an accounting of all revenues and profits obtained by them as a result of their counterfeiting, copyright infringement, unfair competition and other violations, as alleged herein;

*K.*     On the First and Second Claims for Relief, AKF be awarded its attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505;

*L.*     On the Third and Fourth Claims For Relief, AKF be awarded its attorneys' fees as private attorney general pursuant to CCP §1021.5;

*M.*     On the Third and Fourth Claims for Relief, the Court grant restitution to AKF, including the disgorgement of all monies obtained by Defendants through the unlawful sales or distribution of counterfeit, unauthorized or infringing goods;

*N.*     On the Fifth Claim for Relief, AKF be awarded statutory damages for infringement of its registered copyright of up to $150,000 for willful infringement pursuant to 17 U.S.C. § 504(c) or, at AKF's election, an award of its actual damages incurred, including all profits of Defendants obtained in connection with their infringing activities, or in the alternative;

*O.*     On the Sixth Claim for Relief, Defendants be ordered, pursuant to Section 34 of the Trademark Act, 15 U.S.C. § 1116, to file with the Court and serve upon AKF's counsel, within 30 days of the entry of the injunctions and orders

prayed for herein, a written report setting forth under oath and in detail the manner in which they have complied with the injunctions and orders requested herein;

**P.**     On the Sixth Claim for Relief, AKF be awarded up to three times the amount of actual damages sustained by it as a result of Defendants' acts, including any lost profits sustained by AKF or profits unlawfully realized by Defendants; and

**Q.**     Such other and further relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, AKF demands trial by jury against all Defendants and on all issues raised herein.

DATED:   February 21, 2023

**THE FROST FIRM**
Thomas C. Frost, Esq. (185187)
Jonathan Stein, Esq. (123894)
Georg M. Capielo, Esq. (245491)

*/s/ Thomas C. Frost, Esq.*
THOMAS C. FROST, ESQ.
*Attorneys for Plaintiff AK Futures LLC*

INITIAL COMPLAINT          CASE